IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JORGE ACEVEDO-MARTINEZ [7],

Defendant

CRIMINAL NO. 14-754 (DRD)

## REPORT AND RECOMMENDATION

Pending before this Court is defendant Jorge Acevedo-Martínez' [7] (Defendant Acevedo-Martínez) "Motion to Suppress Evidence Obtained during a Warrantless Search following Arrest in a Remote Location from Seizure." Defendant succinctly argues, in his five-page motion, that his arrest and search in the Dominican Republic were conducted by the federal government in a joint venture triggering, as such, the Fourth Amendment. Defendant Acevedo-Martínez posits that the search was in violation of the Fourth Amendment because there was no search warrant and there were no exigent circumstances. Defendant Acevedo-Martínez did not submit any document in support of his conclusory assertions. Defendant Acevedo-Martínez requested a hearing alleging there is a factual matter that requires the same. (Docket No. 1812).

The government opposed the Motion to Suppress, arguing that there was no joint venture because the United States did not substantially participate in the search of Defendant's residence; a search and seizure order was authorized by a Dominican Republic court; and Defendant Acevedo-Martínez has not alleged that any part of the

_____

investigation, search and seizure or the arrest was enough to "shock the conscience." Hence, the Motion to Suppress should be denied. (Docket No. 1839).

The parties were ordered to submit to the Court the reports to which they refer in their filings and which were not filed for the Court's consideration. (Docket No. 1842).

Defendant complied and submitted two Reports of Investigation ("ROI"). In addition, Defendant Acevedo-Martínez clarified that, prior to the government's Response in Opposition (Docket No. 1839), he had not seen the search warrant issued by a Dominican Republic court. (Docket Nos. 1844).

The government also complied and submitted the same two (2) ROIs Defendant had previously submitted. In addition, the prosecutor asserted that he was able to confirm that the participation of the federal law enforcement officers was as observers. (Docket No. 1860).

The Motion to Suppress filed by Defendant Acevedo-Martínez [7] was referred to the undersigned for Report and Recommendation. (Docket Nos. 1822 and 1823).

## FACTUAL BACKGROUND[1]

On December 18, 2014, a federal Grand Jury sitting in the District of Puerto Rico returned an indictment against Acevedo-Martínez and sixteen co-defendants. Defendant was charged with conspiracy to import controlled substances into the United States, conspiracy to possess with intent to distribute controlled substances, conspiracy to possess firearms in furtherance of a drug trafficking crime, and with a money laundering conspiracy. On that same day, the warrant of arrest was issued and Special Agents from

_____

[1] The factual background is taken from the government's Response in Opposition to the Motion to Suppress because of its accuracy and the information contained in the ROIs. (Docket No. 1839, pp. 2-3). These facts do not seem to be in dispute. Defendant Acevedo-Martínez did not submit a factual background.

the Department of Homeland Security Investigations ("HIS"), the Drug Enforcement Administration ("DEA"), and among others, actively sought to arrest Acevedo-Martínez.

At a point unknown to the agents, Acevedo-Martínez fled the jurisdiction to avoid apprehension and prosecution. On February 4, 2018, Acevedo-Martínez was apprehended in the Dominican Republic by Dominican Republic law enforcement officers.

During the arrest, Acevedo-Martínez engaged in a gun-fight with Dominican Republic authorities. At the time of the arrest, Acevedo-Martínez was with Dominican national Larissa Licelott Guerrero-Rosario, who suffered gunshot wounds, and with Dominican/Spaniard citizen Frances Miguel Hernández-Medrano, who was taken into custody by the Dominican authorities.

During the arrest by Dominican authorities, the following items were seized: $483,115.00 USD; 230 pistol rounds; 3 Glock 22 pistols; 1 Sig Sauer P250 pistol; 3 Rolex Watches; 9 phones; 1 White Toyota Land Cruiser; 1 White Volkswagen Golf; 1 green Camouflage Four Track Caam; 2 Venezuelan Driver Licenses with Acevedo-Martínez's picture and fake names; 1 Puerto Rico License with picture and fake name.

Once apprehended, Acevedo-Martínez was deemed expelled from the Dominican Republic. On February 5, 2018, Dominican Republic authorities expelled Acevedo-Martínez from the country by turning him over to the United States Marshals Service ("USMS") along with some of his possessions and items seized during the arrest. Among the possession were the nine cellular telephones, one counterfeit Puerto Rico driver's license, two identification cards from Venezuela with Acevedo-Martínez's pictures but with different names, and a school notebook believed to be a drug ledger. The USMS took

<u>United States of America v. Jorge Acevedo-Martínez [7]</u>
Civil No. 14-754 (DRD)
Report and Recommendation
Page 4
_____

custody of Acevedo-Martínez and possession of the cellular telephones, identification cards and the ledger, and was flown from the Dominican Republic to Puerto Rico. Once Acevedo-Martínez arrived in Puerto Rico, he was taken by the USMS to the United States District Court in San Juan for his initial appearance. The USMS transferred the cellular telephones, identification cards and the ledger to HSI Agents.

## LEGAL ANALYSIS

### 1.  Joint Venture.

Defendant Acevedo-Martínez alleges in his Motion to Suppress that his arrest and search in the Dominican Republic were conducted by the federal government in a joint venture triggering, as such, the Fourth Amendment. In support of his claim, Defendant Acevedo-Martínez indicates that, pursuant to an ROI signed by USMS Deputy Félix Carrión, "[o]n February 4th 2018, at approximately 2:00 am, Members of the Puerto Rico Violent Offenders Task Force (PRVOTF) OCDETF Squad, the U.S. Marshal Service Dominican Republic Attach[é] along with the Departamento de Investigaciones Especiales. D.N.C.D[.] conducted the arrest" of Defendant.  (Docket No. 1812, p. 2). In addition, Defendant states that it is undisputed that there was a pending federal arrest warrant against Defendant Acevedo-Martínez, the USMS requested the assistance of the Dominican Republic authorities to arrest Defendant Acevedo-Martínez and several USMS deputies traveled to the Dominican Republic to arrest Defendant and to transport him to Puerto Rico.  Defendant claims the USMS deputies were also present during the search and seizure of the apartment where Defendant lived.  The Dominican officers provided support to the federal government in the arrest of Defendant and subsequent search of the property.  (*Id.*, p. 3).  As such, the Fourth Amendment applies.  (*Id.*, p. 4).

_____

In turn, the United States asserts that the facts do not support that there was a joint venture because the United States did not "substantially participate" in the search of Defendant's residence.  The government argues the search warrant was obtained from a Dominican Republic court and executed by Dominican Republic authorities alleging violations of Dominican law.  (Docket No. 1839, pp. 4-5).  As such, the Motion to Suppress should be denied.

Generally, foreign searches conducted by foreign law enforcement officers are not subject to the Fourth Amendment and its exclusionary rule. United States v. Castro, 175 F. Supp. 2d 129, 132 (D.P.R. 2001). S*ee also* Lau v. United States, 778 F.Supp. 98, 100 (D.P.R. 1991), *aff'd*, 976 F.2d 724 (1st Cir. 1992). The Fourth Amendment is generally inapplicable to actions carried out by foreign officials in their own countries enforcing their own laws, even if American officials are present and cooperate in some degree. United States v. Rosenthal, 793 F.2d 1214, 1231 (11th Cir. 1986); Government of Canal Zone v. Sierra, 594 F.2d 60, 72 (5th Cir. 1979). Evidence obtained by foreign police officials from searches conducted in their country is generally admissible in federal court regardless of whether the search complied with the Fourth Amendment. Rosenthal, 793 F.2d at 1230; *see* United States v. Morrow, 537 F.2d 120, 139 (5th Cir. 1976). There are, however, two exceptions to this general rule.

The exception to this general rule is where the circumstances of the foreign search and seizure are so extreme that they "shock the judicial conscience," and where American law enforcement officials significantly participated in the foreign search, or where the foreign authorities conducting the search were essentially acting as agents for their United States counterparts. Lau v. United States, 778 F. Supp. at 100 (*citing* United States v.

_____

Mitro, 880 F.2d 1480, 1482 (1st Cir. 1989)) (*citing* United States v. Janis, 428 U.S. 433,

455 n. 31, 96 S.Ct. 3021 (1976))[2]; United States v. Hensel, 699 F.2d 18, 25 (1st Cir. (1983)).

A review of the evidence in the form of ROIs in the case at bar shows, as properly

argued by the government, that the federal agents were merely observers and did not

participate "substantially" in the arrest of Defendant Acevedo-Martínez nor in the search

of his residence.

The ROI (Docket No. 1844-1) states in pertinent part the following:

On Sunday, February 4th, 2018, Acevedo-Martínez was apprehended in the Dominican Republic by Dominican Republic law enforcement officers. During the arrest Acevedo-Martínez engaged in a gun fight with Dominican Republic authorities.  Once apprehended Acevedo-Martínez was deemed expelled from the Dominican Republic.

On Monday, February 5th, 2018, Dominican Republic law enforcement authorities expelled Acevedo-Martínez from the country by turning him over to the United States Marshals Service (USMS) along with his possessions and items seized during the arrest.  Among the possession were the 9 cellular telephones, one counterfeit Puerto Rico driver's license, two identification cards from Venezuela with ACEVEDO-Martinez's pictures but with different names, and a school note book believed to be a drug ledger. The USMS took custody of ACEVEDO-Martinez and possession of the cellular telephones**,** identification cards and the ledger, and was flown from the Dominican Republic to Puerto Rico**.**

Another ROI (Docket No. 1844-2) states in pertinent part as follows:

On February 4th 2018, at approximately 2:00 am, Members of The Puerto Rico Violent Offenders Task Force (PRVOTF) OCDETF Squad, the U.S. Marshals Service Dominican Republic Attaché along with the Departamento de Investigaciones Especiales, D.N.C.D conducted the arrest of Major Case Jorge L. Acevedo-Martinez AKA "Shampoo" at La Avenida Malecon, Villa Duarte, Santo Domingo, Dominican Republic. Jorge L. Acevedo-Martinez AKA "Shampoo" was a Most Wanted/US Marshal Service Major Case, originated by DEA/HSI OCDETF in Operation Lost Paradise FCPR-0314/District of Puerto Rico. During the arrest Jorge L.

---

[2] The Fourth Amendment and the exclusionary rule do not ordinarily apply to foreign searches and seizures.  Janis, 428 U.S. 455 n. 31. ("It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act.")

_____

Acevedo-Martinez AKA "Shampoo" shot at the DNCD in which the officers responded the aggression with gun fire.

Fugitive was with Dominican National/Girlfriend Larissa Licelott Guerrero -Rosario who suffered gunshot wounds and with Dominican/Spaniard Citizen Frances Miguel Hernandez-Medrano who was taken under custody by the D.N.C.D.

The next day Major Case Jorge L. Acevedo-Martinez AKA "Shampoo" was deported to San Juan Puerto Rico where he was taken to the Magistrate Judge and was committed to Guaynabo MDC.

A reading of both ROIs shows that one (Docket No. 1844-1) says Acevedo-Martínez was apprehended by Dominican law enforcement officers on February 4, 2018 and the other one (Docket No. 1844-2) says members of a federal task force OCEDFT Squad, along with the Dominican law enforcement agents, conducted the arrest of Defendant on February 4, 2018. Thus, it seems that the federal law enforcement officers had some participation in Defendant's arrest. However, Defendant Acevedo-Martínez has failed to show that the participation of the federal law enforcement officers was "substantial" to meet the threshold of the joint venture doctrine.

Defendant argues the deputies of the USMS participated in his arrest and that seems to have some basis pursuant to the ROI at Docket No. 1844-2. However, whether the USMS deputies had some participation during Defendant's arrest is of little importance because any participation in Defendant's arrest would not amount to "substantial participation" to satisfy the joint venture doctrine. Defendant Acevedo-Martínez has failed to put forth any evidence to the contrary, like for example: to show the investigation of Defendant was at the behest of the federal authorities; that the federal law enforcement officers substantially participated in the investigation; that the federal officers had pivotal roles in Defendant's arrest; and/or were in control of Defendant while

United States of America v. Jorge Acevedo-Martínez [7]
Civil No. 14-754 (DRD)
Report and Recommendation
Page 8
_____

he was in custody. Defendant Acevedo-Martínez has not presented evidence either that the Dominican Republic law enforcement agents were acting as agents for the federal government.

There is no doubt that Defendant was expelled from the Dominican Republic on February 5, 2018.  It was then that the federal law enforcement officers had an active participation because Defendant Acevedo-Martínez was then handed over to the USMS deputies who took his custody on February 5, 2018, along with his possessions and the items seized by the Dominican authorities and flew him to Puerto Rico from where he had fled to avoid prosecution. Thus, the intervention of the federal authorities was limited to securing the transfer of Defendant to Puerto Rico, after his arrest, to face the charges in the instant case and to execute the arrest warrant that had been issued.[3]

Moreover, the ROIs do not show any participation whatsoever by the federal law enforcement agents in the search and seizure of Defendant's residence and his property. The search and seizure warrant was obtained from a Dominican Republic court and it was executed by the Dominican Republic authorities pursuant to violations of Dominican law. Defendant has not presented any evidence to the contrary.

Furthermore, as argued by the government, the ROIs reflect the passing of information to and from the federal authorities to their Dominican counterparts.  "The fact that Dominican law enforcement authorities shared information with the DEA did

_____

[3] Evidence that the United States may have solicited the assistance of a foreign government in the arrest of a fugitive within its borders is insufficient as a matter of law to constitute United States participation under the joint venture doctrine, as would afford a defendant constitutional protections for a foreign search and seizure; United States law enforcement officers are not required to monitor the conduct of foreign officials who execute a request for extradition or expulsion. United States v. McVicker III, 979 F. Supp. 2d 1154 (D. Or. 2013).

not make it a joint investigation." United States v. Marte, 2018 WL 4571657, at *9 (D. Mass. Sept. 24, 2018) (*citing* United States v. Lee, 723 F.3d 134, 141 (2d Cir. 2013); Castro, 175 F. Supp. 2d at 133; United States v. Gómez Castrillón, 2007 WL 2398810, at *4 (S.D.N.Y. Aug. 15, 2007) (although there was information sharing between Columbia and the United States, there was no joint investigation where Columbian authorities conducted their own investigation and the DEA played no role in monitoring wiretaps or translating the results). Similarly, the fact that the United States provided financial and technical support to the Dominican authorities was not sufficient to transform the Dominican investigation into a joint operation. Marte, 2018 WL 4571657.

Indeed, as the Second Circuit has noted, "[t]he investigation of crime increasingly requires the cooperation of foreign and United States law enforcement officials, but there is no reason to think that Congress expected that such cooperation would constitute the foreign officials as agents of the United States." United States v. Maturo, 982 F.2d 57, 61 (2d Cir. 1992); United States v. Paternina-Vergara, 749 F.2d 993, 998 (2nd Cir. 1984). *See also*, United States v. Molina-Chacón, 627 F.Supp. 1253, 1260 (E.D.N.Y. 1986) (holding that a foreign search prompted by information from U.S. officials does not trigger Fourth Amendment requirements), aff'd sub nom., United States v. DiTommaso, 817 F.2d 201 (2d Cir. 1987).

Thus, the above facts demonstrate that the level of participation of the federal law enforcement officers in Defendant's arrest and search of his property was minimal and said participation does not constitute the level of participation the exception contemplates. As such, the first prong of the joint venture doctrine is not met.

United States of America v. Jorge Acevedo-Martínez [7]
Civil No. 14-754 (DRD)
Report and Recommendation
Page 10
_____

The "shocks the conscience" prong of the two-prong test is clearly not met either, and requires little discussion.  Defendant Acevedo-Martínez has not argued that the actions taken by the Dominican officials "shock the conscience" to invalidate the search. As a matter of fact, this prong is not even mentioned by Defendant.  Hence, this argument is deemed waived and any scenario proffered by the defense cannot shock the conscience. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). *See* Castro, 175 F. Supp. 2d at 133; Rosenthal, 793 F.2d at 1230-31; United States v. Sorren, 605 F.2d 1211, 1215 (1st Cir. 1979).

In view of the above, the facts of this case are not enough to implicate the joint venture doctrine. Thus, the Fourth Amendment protection is not triggered and Defendant Acevedo-Martínez' Motion to Suppress lacks merit.

2.  **Search and Seizure Warrant by the Dominican Republic Court**.

Defendant Acevedo-Martínez moves the Court to suppress all the evidence seized in his apartment because the search of his apartment in the Dominican Republic was warrantless. (Docket No. 1812).  However, the government asserted in its Response in Opposition that, even if the search and seizure is deemed to have been a joint venture, there was a valid search and seizure order issued by a court in the Dominican Republic for Defendant's residence. A copy of said search and seizure warrant was submitted in Spanish and a translation was later filed.  (Docket Nos. 1839-1, 1952-1 and 1959-1).

The validity of the search and seizure warrant was not originally challenged by Defendant Acevedo-Martínez.  As a matter of fact, Defendant Acevedo-Martínez did not even recognize in his Motion to Suppress that a search and seizure warrant issued by a Dominican court for his residence existed. However, in the Motion in Compliance (Docket

_____

No. 1844), Defendant clarified that he had not seen the search warrant until the government filed its Response in Opposition to his Motion to Suppress but the search warrant submitted was incomplete.[4]  Defendant Acevedo-Martínez argued briefly in the Motion in Compliance that the content of the search warrant showed, with all certainty, that the single basis the Dominican authorities had to obtain the search warrant was grounded on information provided by federal authorities considering their interest in arresting Defendant Acevedo-Martínez.  (Docket No. 1844, p. 2).

However, a reading of the search warrant shows otherwise.  The search warrant indicates that the Dominican authorities were conducting a financial investigation on their own about Defendant Acevedo-Martínez for money laundering in the Dominican Republic.  To this effect, the search warrant mentions that the Prosecutor's Office in the Dominican Republic conducted "an **independent financial investigation in the Dominican Republic** for laundering of monetary instruments product of drug trafficking against Jorge Luis Acevedo Martínez (Champu) … who evaded Puerto Rican authorities in a prosecution that links him to homicide and drug trafficking crimes in Case No. 14-754 (DRD)."  (Docket No. 1959-1, p. 1, emphasis added).  The search warrant further states that: "**pursuant to the intelligence we [Prosecutor's Office in the Dominican Republic] have gathered from various proceedings in the course of our investigation** … Defendant entered the Dominican Republic where he continues with his criminal activities and runs the operation from apt. 13B of Torre Gil Roma XXXI [apartment subject of the search warrant]…" (*Id.*, emphasis added).  Moreover, the search

_____

[4] The search warrant from the Dominican Republic court originally submitted by the government (Docket No. 1839-1) was incomplete as confirmed by the government in Docket Nos. 1952-1 and 1959-1 (translation). The complete search warrant from the Dominican Republic court was used in drafting this Report and Recommendation.

warrant states that, pursuant to the investigation, Defendant used his apartment to meet with other members of the criminal organization where they brought various bags which presumably contained controlled substances, money or documents related to illegal activities in violation of the following laws of the Dominican Republic:  Law 50-88, Law 72-02, Law 155-0-17 and Law 631-16.  (*Id.*, pp. 1-2).  In addition, the search warrant avers that the Dominican authorities had information that, within a few hours, members of the criminal organization would conduct a drug transaction in exchange for money at Defendant's apartment.  (*Id.*, p. 2).  Finally, the search warrant states that: "... **in accordance to the investigations conducted by the Prosecutor's Office**, we believe there are grounds to proceed in authorizing the requested search warrant against Jorge Luis Acevedo Martínez (Champu, under investigation for supposed violation of Law 50-88 Drugs and controlled substances and Law 72-02 Laundering of monetary instruments product of the illicit trafficking of controlled substances and other felonies, amended by Law 155-0-17 and Law 631-16 Firearms.  (*Id.*, p. 2).

Hence, pursuant to the content of the search warrant from the Dominica Republic court, it is evident the search warrant was obtained by the Dominican Republic authorities based on their own surveillance and investigation for violations of the laws of the Dominican Republic.  Nowhere does the search warrant states that it was based on the federal authorities' interest in arresting Defendant Acevedo-Martínez and the information the federal authorities provided.

It is worth noting that Defendant Acevedo-Martínez did not allege either egregious conduct by the Dominican authorities, that the search and seizure warrant contains false statements or information made knowingly or with reckless disregard of the truth or

_____

technically accurate statements that have been rendered misleading by material omissions. *See* United States v. Grant, 218 F. 3d 72, 77 (1st Cir. 2000). Thus, the search and seizure warrant is presumed to be valid.

In sum, since Defendant Acevedo-Martínez has failed to successfully challenge the order of the Dominican Court and the subsequent search and seizure, suppression on this ground lacks merit.

### 3. Suppression Hearing.

Defendant Acevedo-Martínez requested a suppression hearing due to an alleged factual issue. However, Defendant Acevedo-Martínez has not met the threshold to entitle him to a hearing.

A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress. United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011). "Rather, '[a] hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief.'" United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013) (*quoting* United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996)). "The burden is on the defendant to allege facts, 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996) (*quoting* United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994)).

United States of America v. Jorge Acevedo-Martínez [7]
Civil No. 14-754 (DRD)
Report and Recommendation
Page 14
_____

## CONCLUSION

Pursuant to the foregoing, it is recommended to the Court that Defendant Jorge Acevedo-Martínez' [7] "Motion to Suppress Evidence Obtained during a Warrantless Search following Arrest in a Remote Location from Seizure" (Docket No. 1812) be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Fed. R. Crim. P. 59 (b)(2). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir.1986); *see also* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.").

In San Juan, Puerto Rico, this 23rd day of January of 2019.

S/ CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE